**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

SUSAN E. JONES,

Plaintiff,

vs.

JAMES NESOM, et al,

Defendants.

_______________________________________/

CASE NO. CV F 09-1468 LJO DLB

**ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS**
(Doc. 8.)

**INTRODUCTION**

Defendants California unemployment insurance officials and administrative law judges seek to dismiss plaintiff Susan E. Jones ("Ms. Jones'") unemployment insurance denial claims as barred by defenses of res judicata, official capacity and judicial immunity. Ms. Jones filed no papers to oppose dismissal of her claims. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the November 17, 2009 hearing, pursuant to Local Rule 78-230(c), (h). For the reasons discussed below, this Court DISMISSES this action.

**BACKGROUND**[1]

**The Parties**

Ms. Jones is a United Kingdom citizen and has been a legal permanent resident of the United

[1] The factual background is derived generally from Ms. Jones' First Amended Petition for Writ of Mandate and Complaint for Damages ("writ of mandate petition") filed in her underlying state court action and from her Complaint ("complaint") in this action.

States since 1973. Ms. Jones' legal permanent resident status has neither been lost nor suspended.

Defendants James Nesom ("Mr. Nesom") and Forrest E. Boomer ("Mr. Boomer") are officials with the California Employment Development Department ("EDD") and were involved in determination that Ms. Jones is ineligible for unemployment insurance benefits. Defendant Patrick W. Henning ("Mr. Henning") is the EDD director with "ultimate authority for the administration of the unemployment insurance program in the State of California."

Defendants Debra Berg ("ALJ Berg"), Joan Borucki ("ALJ Borucki") and Ann M. Richardson ("ALJ Richardson") are administrative law judges with the California Unemployment Insurance Appeals Board ("CUIAB") and affirmed that Ms. Jones is ineligible for employment in the United States and thus for unemployment insurance benefits.[2]

**Benefits Ineligibility Determination And Appeals**

______In fall 2004, Ms. Jones was laid off from her job and applied with EDD for unemployment insurance benefits. Ms. Jones was awarded benefits of $99 per week for maximum benefits of $2,498 during January 2005 to July 2005.

In July and August 2005, EED notified Ms. Jones that she was ineligible for unemployment insurance benefits in the absence of documentation that she was authorized to work in the United States. EDD demanded that Ms. Jones return her benefits and pay a penalty for a total of $3,247.40. EDD claimed that Ms. Jones' "green card" (legal permanent resident card) had expired to render her ineligible to work in the United States.

Ms. Jones pursued an administrative appeal, including an October 19, 2005 hearing before an EDD administrative law judge. Ms. Jones pursued a further appeal before the CUIAB, and ALJs Berg, Borucki and Richardson issued a January 26, 2006 decision to uphold that Ms. Jones was ineligible for unemployment insurance benefits.

Ms. Jones continued to correspond with EDD officials to attempt to reverse the ineligibility determination.

On May 3, 2006, EDD obtained a $3.609.10 judgment against Ms. Jones for her failure to repay

[2] Mr. Nesom, Mr. Boomer, Mr. Henning and ALJs Berg, Borucki and Richardson will be referred to collectively as "defendants."

unemployment insurance benefits and the penalty. EDD filed a lien against Ms. Jones' Mariposa County property, and Ms. Jones paid EDD's lien under protest in 2007.

**Ms. Jones' Writ Of Mandate Petition**

On December 17, 2008, Ms. Jones initiated her underlying Fresno County Superior Court action ("state court action") against EDD to address the ineligibility determination. On February 11, 2009, Ms. Jones filed her writ of mandate petition against respondents EED and CUIAB to allege that EED and CUIAB have refused their duty to:

1. "[R]ecognize JONES' legal right to accept employment in the United States by virtue of her status as Legal Permanent Resident";
2. "[R]ecognize JONES' efforts to seek employment from January 30, 2005 to July 30, 2005";
3. "[R]everse the adverse determinations";
4. "[R]elease JONES from the 'overpayment' claim"; and
5. "[R]eturn JONES' payment of $3,984.99 with interest."

As for damages, the writ of mandate petition alleged that EDD and CUIAB:

1. "[W]rongfully forced Jones to pay the sum of $3,984.99";
2. "[A]ffirmatively discouraged JONES from seeking employment";
3. [A]ffirmatively reduced JONES' ability to successfully gain employment because of this dispute";
4. "[C]aused JONES to lose wages at an estimated rate of $2,000 per month beginning August 1, 2005 and continuing to JONES' anticipated date of retirement March 31, 2012 (age 65) for total lost wages (79 months) of $158,000"; and
5. "[C]aused JONES enormous emotional distress valued at $1,580,000."

The writ of mandate petition sought writs to command EDD and CUIAB to recognize Ms. Jones' eligibility for unemployment insurance benefits during January 2005 to July 2005 and to return Ms. Jones' $3,984.99 payment plus interest. The writ of mandate petition further sought $1,738,000 for "lost wages and emotional distress."

The Fresno County Superior Court issued a June 30, 2009 ruling to sustain EDD and CUIAB's

demurrer on grounds that Ms. Jones' claims were time barred. A July 7, 2009 judgment against Ms. Jones was entered.

**Ms. Jones' Federal Action**

On August 20, 2009, Ms. Jones filed her complaint in this action to allege claims under 42 U.S.C. § 1983 that defendants "deprived Mrs. Jones of the right to work in the United States and the right to receive unemployment insurance benefits when she was eligible." The complaint's (first) "Violation of Civil Rights – Interference with Right to Work" claim alleges that:

1. "EDD's claim that Mrs. Jones was not authorized to work in the United States, and Mrs. Jones' dispute with EDD arising therefrom, prevented Mrs. Jones from gaining new employment since the layoff in 2004";
2. Ms. Jones "has always been eligible to work in the United States continuously since first gaining legal permanent resident status in 1973"; and
3. "Mr. Nesom affirmatively interfered with Mrs. Jones ability to gain employment by telling Mrs. Jones she was 'not in the system' and therefore not eligible to work."

The complaint's (second) "Illegal Denial of Unemployment Insurance Benefits" claim alleges that:

1. Ms. Jones was eligible for unemployment insurance benefits in 2005under California and federal law; and
2. "Defendants' claim in 2005 that Mrs. Jones' was not eligible for unemployment insurance benefits, and defendants' subsequent actions to force Mrs. Jones to repay the benefits she lawfully received in 2005, was a breach of their promise to pay benefits when Mrs. Jones was eligible and a violation of 42 U.S.C. § 503(a)(1) [federal grants to states for unemployment compensation] and the Due Process clauses of the Fifth and Fourteenth Amendments of the United States Constitution."

The complaint seeks general, special, compensatory, statutory and punitive damages and attorney fees.

/ / /

/ / /

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion Standards**

Defendants contend that res judicata bars Ms. Jones' federal interference with right to work and denial of unemployment insurance claims which "seek to vindicate the same injury" subject to the state court action. Defendants argue that Ms. Jones "erroneously seeks money damages against Defendants in their official capacity" and that claims against ALJs Berg, Borucki and Richardson are barred by judicial immunity.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, "judicial notice may be taken of a fact to show that a complaint does not state a cause of

action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may "'take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted). As such, this Court may consider the writ of mandate petition and related state court filings.

**Res Judicata**

Defendants argue that this action "is barred by res judicata because it simply seeks to relitigate Plaintiff's unsuccessful state-court proceeding, which was based on nearly identical facts and also challenged the denial of her unemployment benefits by EDD and CUIAB." Defendants further contend that this action is barred in that "it seeks to raise claims based on the same cause of action as her prior state court proceeding under the guise of new legal theories."

"To determine the preclusive effect of a state court judgment, federal courts look to state law." *Intri-Plex Technologies, Inc. v. The Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). "Res judicata" is "the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 896-897, 123 Cal.Rptr.2d 432 (2002). Res judicata "precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction." *Rice v. Crow*, 81 Cal.App.4th 725, 734, 97 Cal.Rptr. 110 (2000) (dismissal of a California superior court complaint with prejudice is a final judgment on merits). Under res judicata, "a judgment for the defendant serves as a bar to further litigation of the same cause of action." *Mycogen*, 28 Cal.4th at 897, 123 Cal.Rptr.2d 432.

Res judicata "promotes judicial economy" in that "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." *Mycogen*, 28 Cal.4th at 897, 123 Cal.Rptr.2d 432. "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." *Weikel v. TCW Realty Fund II Holding Co.*, 55 Cal.App.4th 1234, 1245, 65 Cal.Rptr.2d 25 (1997).

/ / /

***Elements***

The "prerequisite elements" to apply the res judicata doctrine to an entire cause of action or one or more issues are: "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *People v. Barragan*, 32 Cal.4th 236, 253, 9 Cal.Rptr.3d 76 (2004) (quoting *Brinton v. Bankers Pension Services, Inc.,* 76 Cal.App.4th 550, 556, 90 Cal.Rptr.2d 469 (1999)).

Defendants note that Ms. Jones was the charging party in the state court action as she is in this action to satisfy the identity of party requirements. Defendants point out that the state court action concluded with July 7, 2009 judgment to satisfy the final judgment requirement. Defendants identify the "remaining issue" as "whether the claims litigated in the current action were litigated in a prior proceeding."

***Primary Right Theory***

"California's res judicata doctrine is based upon the primary right theory." *Mycogen*, 28 Cal.4th at 904, 123 Cal.Rptr.2d 432. In *Crowley v. Katleman*, 8 Cal.4th 666, 681-682, 34 Cal.Rptr.2d 386 (1994), the California Supreme Court explained the primary right theory:

> It provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. (*McKee v. Doud* (1908) 152 Cal. 637, 641 [93 P. 854].) The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) A pleading that states the violation of one primary right in two causes of action contravenes the rule against "splitting" a cause of action. (*Wulfjen v. Dolton* (1944) 24 Cal.2d 891, 894-895 [151 P.2d 846].)
>
> As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. (*Slater v. Blackwood*, supra, 15 Cal.3d 791, 795.) It must therefore be distinguished from the legal theory on which liability for that injury is premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." (*Ibid.*) The primary right must also be distinguished from the remedy sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." (*Wulfjen v. Dolton, supra*, 24 Cal.2d 891, 895-896, italics deleted.)

> The primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement (Code Civ. Proc., § 430.10, subd. (c); *Wulfjen v. Dolton, supra*, 24 Cal.2d 891, 894-895); or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata (*Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 638-640 [134 P.2d 242]).

"An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose." *Federation of Hillside and Canyon Associations v. City of Los Angeles,* 126 Cal.App.4th 1180, 1203, 24 Cal.Rptr.3d 543 (2004).

Defendants contend that Ms. Jones' injury arises from "denial of her unemployment benefits" and that the "set of facts" in the state court action and this action are "identical" given that EDD and CUIAB concluded Ms. Jones was ineligible for unemployment insurance benefits.

Defendants attribute Ms. Jones to "seek to relitigate her unsuccessful claim in federal court under a different legal theory." Defendants note that Ms. Jones could have pursued her section 1983 claims in the state court action in that "mandamus 'is an appropriate remedy for the enforcement of a civil right.'" *Hardy v. Stumpf*, 37 Cal.App.3d 958, 961, 112 Cal.Rptr. 739 (1974) (quoting *Wrather-Alvarez etc., Inc. v. Hewicker*, 147 Cal.App.2d 509, 511)). Defendants argue that Ms. Jones' section 1983 claims are barred in this action "by the preclusive effect of the prior state court judgment arising from the same primary right." Although a plaintiff did not raise a section 1983 claim in a prior state proceeding, "the doctrine of res judicata applies not only to those claims actually litigated in the first action but also to those which might have been litigated as part of that cause of action." *Clark v. Yosemite Community College Dist.*, 785 F.2d 781, 786-787 (9th Cir. 1980) (citing *Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir.1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976). "A section 1983 claim may be brought in California state courts." *Clark*, 785 F.2d at 787.

In the state court action, Ms. Jones pursued a claim for denial of unemployment insurance benefits. The gist of her state court claim was that she was wrongly found ineligible for unemployment insurance benefits, forced to repay benefits, and deprived of ability to secure employment. Her alleged injuries in the state court action were forfeited unemployment insurance benefits and lost wages arising from inability to work based on the ineligibility determination. In this action, the gist of Ms. Jones'

claims and injury are the same – wrongful determination of ineligibility resulting in forfeited unemployment insurance benefits and lost wages. Ms. Jones' alleged injuries arose from the same basic fact – alleged improper determination of ineligibility for unemployment insurance benefits. Ms. Jones could have pursued section 1983 claims in the state court action but chose not to. Ms. Jones invalidly attempts to split her claim to render her section 1983 claims barred by res judicata.

**Official Capacity**

Defendants contend that they are not subject to liability for Ms. Jones' section 1983 claims in their official capacity in that the complaint seeks damages, not "prospective relief." Defendants cite to *Pena v. Gardner*, 976 F.2d 469, 472-473 (9th Cir. 1992), which notes:

> The eleventh amendment bars both a federal court action for damages (or other retroactive relief) brought by a citizen against a state and such a federal court action brought by a citizen against a state official acting in his official capacity. *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1355; *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979).
>
> It is thus clear that the eleventh amendment will bar Pena from bringing his claims in federal court against the state officials in their official capacities. It will not, however, bar claims against the state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *DeNieva v. Reyes*, 966 F.2d 480, 483-84 (9th Cir.1992).

Eleventh Amendment immunity shields defendants from liability in their official capacities to warrant dismissal of Ms. Jones' claims against defendants in their official capacities.

**Judicial Immunity**

ALJs Berg, Borucki and Richardson seek to invoke judicial immunity to bar Ms. Jones' claims against them.

The United States Supreme Court has explained judicial immunity:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in *Bradley v. Fisher*, 13 Wall 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.

*Pierson v. Ray*, 386 U.S. 547, 553-554, 87 S.Ct. 1213 (1967).

The Ninth Circuit Court of Appeals has explained further that:

> Judges are absolutely immune from damages for judicial acts taken within the jurisdiction of their courts. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc) (*Ashelman)*. Grave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity. *Stump v. Sparkman*, 435 U.S. 349, 355-57, 98 S.Ct. 1099, 1104-05, 55 L.Ed.2d 331 (1978) (*Stump)*. A judge loses absolute immunity only when he acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature. *See Forrester v. White*, __ U.S. __, 108 S.Ct. 538, 544-46, 98 L.Ed.2d 555 (1988); *Stump*, 435 U.S. at 356-57 & n. 7, 98 S.Ct. at 1105 & n. 7, *Ashelman*, 793 F.2d at 1075.

*Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir.), *cert. denied*, 488 U.S. 995, 109 S.Ct. 561(1988).

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099 (1978). Moreover, "as long as a judge has jurisdiction to perform the 'general act' in question, he or she is immune 'however erroneous the act may have been, . . . however injurious in its consequences it may have proved to the plaintiff' and irrespective of the judge's motivation.'" *Harvey v. Waldron*, 210 F.3d 1008, 1012 (9th Cir. 2000) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200, 106 S.Ct. 496 (1985)); *see Stump*, 435 U.S. at 356, 98 S.Ct. 1099 ("the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge.")

As administrative law judges, ALJs Berg, Borucki and Richardson receive judicial immunity. "Administrative law judges . . . are entitled to quasi-judicial immunity so long as they perform functions similar to judges . . . in a setting like that of a court." *Hirsch v. Justices of the Supreme Court of California*, 67 F.3d 708, 715 (9th Cir. 1995); *see Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) ("As a person performing 'judge-like functions' that were not clearly outside the scope of his jurisdiction, Commissioner Schwartz is judicially immune from damage liability in this action.")

Ms. Jones' claims arise from ALJs Berg, Borucki and Richardson's judicial acts committed within their judicial jurisdiction as administrative law judges. Even if their alleged acts were malicious or corrupt, they are protected under judicial immunity.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES this action with prejudice;
2. DIRECTS the clerk to enter judgment against plaintiff Susan E. Jones and in favor of defendants James Nesom, Forrest E. Boomer, Patrick W. Henning, Debra Berg, Joan

Borucki and Ann M. Richardson; and

3. FURTHER DIRECTS the clerk to close this action.

IT IS SO ORDERED.

**Dated: November 4, 2009**

**/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE